```
                    UNITED STATES DISTRICT COURT
                      DISTRICT OF CONNECTICUT

UNITED STATES OF AMERICA       :
                               :
v.                             :      Civil No. 3:05cv1655 (JBA)
                               :
BRADLEY P. SWEENEY             :
```

### Ruling on Motion to Vacate, Set Aside or Correct Sentence and Motion for Appointment of Counsel [Docs. ## 1, 10]

Bradley P. Sweeney ("Sweeney") waived indictment and pled guilty before this Court on April 13, 2004 to a one-count Information charging him with attempting to use a means of interstate commerce (the internet) to entice and coerce a minor to engage in prohibited sexual activity, in violation of 18 U.S.C. § 2442(b). See Dkt. No. 3:04cr116, Information [Doc. # 13]; Plea Agreement [Doc. # 14]; Petition to Plead Guilty [Doc. # 15]. Following briefing and a two-day sentencing hearing held October 13 and 14, 2004, Sweeney was sentenced to 65 months of imprisonment, to be followed by 10 years of supervised release. Judgment entered on October 20, 3004. See Dkt. No. 3:04cr116 [Doc. # 41]. On October 25, 2005, petitioner filed a motion to vacate, set aside or correct his sentence under 28 U.S.C. § 2255, claiming a variety of errors in his sentencing proceeding and ineffective assistance of counsel. Dkt. No. 3:05cv1655 [Doc. #1]. He also moved for appointment of counsel. Dkt. No. 3:05cv1655 [Doc. # 10]. For the following reasons, both motions will be denied.

**I.     Factual and Procedural Background**

The following facts are taken from petitioner's guilty plea hearing, presentence investigation report, and psychiatric evaluation prepared for sentencing.

At the time of his offense, Sweeney was a 45-year-old male residing in New Hampshire.  In January and February 2004 he logged on to an America Online chat room called "Ilovemucholdermen" and there engaged in a series of eleven instant message chat sessions with "Tully," who stated during several chats that she was a 13-year-old girl.  The transcripts of these chat sessions were made part of the presentence investigation report.  The conversations between Sweeney and "Tully" were very sexually explicit and included references to masochistic and sadistic sexual behavior, in which Sweeney would dominate and humiliate the girl.  There were many discussions of binding and gagging her and preventing her from leaving his house.

In February 2004 Sweeney and "Tully" made plans to meet at a coffee shop in New Haven, where he would pick her up and bring her back to New Hampshire to live with him.  In fact, "Tully" was an F.B.I. agent posing as a young girl.  Sweeney was arrested at the assignation location approximately three hours after other F.B.I. agents observed him leaving his New Hampshire home.  He had in his car papers related to obtaining legal guardianship of

a minor.

Sweeney, represented by a Federal Public Defender, waived indictment and pleaded guilty several months later to attempting to use a means of interstate commerce to entice and coerce a minor to engage in prohibited sexual activity, in violation of 18 U.S.C. § 2442(b).  At the guilty plea hearing, he stated to the Court's satisfaction a factual summary of his actions showing that he was guilty of the charged offense, and further stated that he agreed with the Government's summary of the evidence demonstrating his guilt.[1]  He stated on the record that he had had no difficulty communicating with his attorney and was satisfied with the representation he had received.  As explained in the written plea agreement and on the record, Sweeney was advised that he was subject to a mandatory minimum sentence of 5 years, and could be sentenced to a term of supervised release of up to life. [Doc. #14] at 1.

Prior to sentencing, defense counsel obtained a mental health evaluation, a report of which was attached to the defendant's memorandum in aid of sentencing [Doc. # 31].  The report detailed Sweeney's history of alcohol dependence and

---

[1] THE COURT:  ... Mr. Sweeney, do you agree with the summary that has been given by the government of what you did?
    THE DEFENDANT: Yes, your Honor.
    THE COURT: Is there anything that you disagree with?
    THE DEFENDANT: No, your Honor.
Tr. of Guilty Plea 4/13/04, at 41.

substance abuse since a very young age, physical and possibly sexual abuse as a child, and inability to sustain emotional attachments as an adult.  The psychiatrist diagnosed him with "mixed personality disorder with schizotypal, antisocial and narcissistic components," and acute depression with passive suicidal ideation.  The psychiatrist recommended ongoing alcohol/ substance abuse treatment and psychiatric treatment to "reduce the chances of further offending."  See Mem. in Aid of Sent. [Doc. # 29], Ex. 1 at 16-17.

For the sentencing hearing the parties briefed several disputed issues, primarily whether Section 2A3.1 or 2A3.2 of the United States Sentencing Guidelines applied.[2]  The Government

---

[2] U.S.S.G. § 2A3.1. Criminal Sexual Abuse; Attempt to Commit Criminal Sexual Abuse
(a) Base Offense Level: 30
(b) Specific Offense Characteristics: ...
    (2) (A) If the victim had not attained the age of twelve years, increase by 4 levels; or (B) if the victim had attained the age of twelve years but had not attained the age of sixteen years, increase by 2 levels.  ...
    (6) If, to persuade, induce, entice, or coerce a minor to engage in prohibited sexual conduct, or if, to facilitate transportation or travel, by a minor or a participant, to engage in prohibited sexual conduct, the offense involved (A) the knowing misrepresentation of a participant's identity; or (B) the use of a computer or an interactive computer service, increase by 2 levels.

    U.S.S.G. § 2A3.2. Criminal Sexual Abuse of a Minor Under the Age of Sixteen Years (Statutory Rape) or Attempt to Commit Such Acts
(a) Base Offense Level: 18
(b) Specific Offense Characteristics: ...
    (2) If ... the offense involved the knowing misrep- resentation of a participant's identity to persuade, induce,

also sought, and Sweeney opposed, a two-level enhancement under U.S.S.G. 2A3.1(b)(2)(B) because the intended victim was between the ages of 12 and 16, and an additional two-level enhancement under 2A3.1(b)(6) for use of a computer during the offense of conviction. In a bench ruling issued October 14, 2004, the Court held that U.S.S.G. 2A3.1 applied, and that the computer use enhancement was warranted but the age enhancement was not. Tr. 10/14/05 at 2-10. The Court also rejected defendant's requested downward departures based on diminished capacity and extraordinary mental and emotional conditions, as the Court was without authority for those departures under the guidelines, given the nature of his conviction. Id. at 11-12.

In his § 2255 petition, Sweeney asserts that his counsel was ineffective for "fail[ing] to object to personal comments entered into transcripts that were made by the U.S. Attorney [and] counsel failed to fully app[r]ise client of all options regarding plea bargain that were harmful to client[']s future course of life." Petition [Doc. #1] at ¶ 12. As his second ground for relief, Sweeney claims that a conflict of interest exists "when a federal public defender is being paid by the federal

---

entice, or coerce the minor to engage in prohibited sexual conduct; or (ii) a participant otherwise unduly influenced the minor to engage in prohibited sexual conduct, increase by 4 levels.
    (3) If a computer or an interactive computer service was used to persuade, induce, entice, or coerce the minor to engage in prohibited sexual conduct, increase by 2 levels. ...

government...." Id.  Third, he alleges that "defense counsel never raised the mental health issues, as listed in the PSR, that this client was under treatment for.  The history of alcoholism/drug addiction was a factor.  Defense counsel never investigated his client[']s background to see if there were any people who knew his client[']s character and knew his client was/is/and will not be a sex offender." Id.  As his fourth claim, Sweeney asserts "unconstitutional sentencing enhancements added for defendant as 1st time criminal," and argues "there was an inappropriate sentence given for the defendant [because] the court, U.S. attorney and defense counsel all disregarded the defendant[']s history, and used only fantasy conversation as a basis of conviction." Id.  In his reply memorandum [Doc. # 8], Sweeney raises a number of other challenges to the calculation of his sentence, including the use of the November 2003 edition of the Sentencing Guidelines, the fact that the purported victim of the offense was an F.B.I. agent posing as a minor, the fact that the statute under which he was convicted is in the "past tense," the calculation of his criminal history, and the application of the mandatory minimum sentence.

**II. Discussion**

    **A.**   **"Ground One: Ineffective Defense Counsel"**

"A convicted defendant's claim that counsel's assistance was so defective as to require reversal of a conviction or ...

sentence has two components.  First, the defendant must show that counsel's performance was deficient.  This requires showing that counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment.  Second, the defendant must show that the deficient performance prejudiced the defense.  This requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable."  Strickland v. Washington, 466 U.S. 668, 687 (1984).  The "Strickland v. Washington test applies to challenges to guilty pleas based on ineffective assistance of counsel."  Hill v. Lockhart, 474 U.S. 52, 58 (1985).  "Where ... a defendant is represented by counsel during the plea process and enters his plea upon the advice of counsel, the voluntariness of the plea depends on whether counsel's advice 'was within the range of competence demanded of attorneys in criminal cases.'"  Id. (quoting McMann v. Richardson, 397 U.S. 759, 771 (1970)).  Second, "in order to satisfy the 'prejudice' requirement, the defendant must show that there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial."  Id.

In this case, Sweeney alleges his counsel failed to explain his "options" or the implications of a guilty plea.  This claim has no factual basis in the record.  Defendant signed a plea

agreement acknowledging his understanding that he faced a mandatory minimum sentence of 5 years, that the maximum sentence was 30 years, the maximum term of supervised release was life, and that he could face three years' imprisonment for a violation of a condition of supervised release, without any credit for time already served.  Plea Agreement at 1-2.  Further, under the heading "Collateral Consequences/Sex Offender Registration" the plea agreement provides that "defendant understands that his plea of guilty may result in his being required to register with sex offender registries in accordance with law."  Id. at 6.  Defendant acknowledged his understanding of these sentencing constraints and collateral consequences on the record in open court when his guilty plea was accepted.

Also in the plea agreement and in open court Sweeney voluntarily waived his right to trial by jury and all of its attendant due process protections.  The Court found that Sweeney's plea was made intelligently, knowingly and voluntarily, that he understood the rights he was giving up, and that he understood the sentence he might face.  Finally, Sweeney stated to the Court that he was "fully satisfied" with the representation he had received from his counsel.  Tr. of Guilty Plea at 15.  Accordingly, there is no basis in the record for finding that counsel was ineffective for failing to apprise Sweeney of the possible sentence or collateral consequences he

could face by pleading guilty.

Defendant argues that counsel should have objected to "personal comments" made by the Assistant U.S. Attorney, but has not specified what those comments were. The Court has reviewed the transcripts of the guilty plea and sentencing proceedings and is unable to identify comments to which Sweeney's counsel could have objected, let alone was required to object to avoid constitutionally deficient performance.

Sweeney writes that his "attorney said he was not going to appeal because 'you did it, so there is nothing to appeal.'" Petition at ¶ 12. Petitioner was advised by the Court on two occasions during his guilty plea proceedings that he had a right to appeal; the Court also advised him that any appeal must be filed within 10 days, and if he could not afford to retain counsel for an appeal, counsel would be appointed for him. Tr. of Guilty Plea at 36. Sweeney, however, never states that he asked his attorney to file an appeal, and therefore he cannot show that his counsel's performance was deficient in failing to file an appeal.[3]

Finally, to the extent that Sweeney intends to assert in his Reply brief, see [Doc. #8] at 7, that his counsel was ineffective

---

[3] Even if Sweeney had waived his right to appeal, counsel's failure to file an appeal and adequate brief pursuant to Anders v. California, 386 U.S. 738 (1967), if the client requested him to file an appeal, would be constitutionally deficient. See Campusano v. United States, 442 F.3d 770, 777 (2d Cir. 2006).

9

for failing to move to suppress his confession, this argument is not persuasive because Sweeney does not state that the existence of the confession was a factor in his decision to plead guilty. In fact, in his written petition to enter a plea of guilty, Sweeney specifically indicated, "I have made [a] statement to [a] law enforcement officer . . . in which I admitted the crime or any part of the crime to which I now want to plead guilty. I would choose to plead "GUILTY" even if I knew that the statement could not be used against me." See Dkt. No. 3:04cr116 [Doc. #15] at 10. Moreover, there was ample other evidence, particularly the transcripts of his chat sessions, to convict Sweeney of the offense charged without his confession. Given this other incriminating evidence, the existence of the confession alone could not have coerced Sweeney into pleading guilty. Because counsel's failure to move to suppress the confession has not been shown to have affected the voluntariness of Sweeney's guilty plea, Sweeney cannot show that his counsel's performance was deficient in this respect.

    B.   "Ground Two: Conflict of Interest"

Petitioner argues that there is an inherent conflict of interest where a public defender is paid by the government because "there is no incentive for the attorney to pursue a vigorous defense for the defendant." Petition at ¶ 12. The Second Circuit has held with respect to the State of

Connecticut's public defender system "that even though the Public Defender is appointed by the same judges who will hear the cases in which he participates, and even though those same judges fix the Public Defender's salary and term of office, the ... system is not violative of due process." United States ex rel. Reid v. Richmond, 277 F.2d 702, 703 (2d Cir. 1960). The same reasoning applies to the federal defender system.

Sweeney makes no allegation that his public defender had an actual conflict of interest with regard to his case, and therefore prejudice will not be presumed. "[W]hen the claim of ineffective assistance of counsel is based on an asserted conflict of interest ... prejudice may be presumed. A defendant is entitled to a presumption of prejudice on showing (1) 'an actual conflict of interest' that (2) 'adversely affected his lawyer's performance.'" United States v. Moore, 220 F.3d 65, 69 (2d Cir. 2000) (quoting Cuyler v. Sullivan, 446 U.S. 335, 348 (1980)). The Court has already discussed Sweeney's claims related to his counsel's performance and found them without merit. Because Sweeney does not show either an actual conflict or an adverse effect on his attorney's performance, his claim of a constitutional rights violation based on representation by a federal defender fails.

### C.   "Ground Three: Insufficient Counsel Investigation to Present Mitigating Circumstances"

Failure to "conduct a thorough investigation of the

defendant's background" or present available mitigating evidence may be constitutionally deficient performance by counsel. Williams v. Taylor, 529 U.S. 362, 396 (2000) (death penalty prosecution).  In this case, however, defense counsel took appropriate steps to present evidence of mitigating factors in Sweeney's background, including obtaining a psychiatric evaluation by Dr. Alec Buchanan, Associate Professor in Law and Psychiatry at the Yale University Department of Psychiatry.  Dr. Buchanan, in turn, requested that Dr. Madelon Baranoski, a clinical psychologist, administer a battery of psychological tests to Sweeney, the results of which were incorporated into Dr. Buchanan's report.  The report was a thorough, 17-page investigation into Sweeney's background, including his history of childhood physical abuse, substance and alcohol abuse, current psychiatric disorders, and recommendations for future placement and treatment.

Contrary to Sweeney's assertion that "defense counsel never raised the mental health issues" relevant to his case, Petition at ¶ 12, these issues were fully briefed and explored at the sentencing hearing.  Sweeney's attorney argued that Sweeney should be sentenced at the bottom of the guidelines range because his crime was committed while he was in the throes of depression, which was either triggered or exacerbated by alcohol abuse, but that Sweeney had sought and received help and his mental

condition had improved since the crime was committed. Tr. 10/14/05 at 13-14. Defense counsel argued that Dr. Buchanan's report supported the conclusion that Sweeney had benefitted and would continue to benefit from psychiatric treatment, consistent with the plan outlined in the report. Id. at 14-16. In fact, partly based on that reasoning, the Court sentenced Sweeney to 65 months' imprisonment, near the bottom of the 63-78 month guidelines range.

Sweeney's assertion that his counsel should have presented testimony from "people who knew [him] and knew [he] was/is/and will not be a sex offender" is without merit. Apart from the doubtful legal competency of lay witnesses to opine on whether defendant was a sex offender,[4] defense counsel did provide a letter from Sweeney's ex-wife, Rita Wilde, attesting to his character, and Ms. Wilde was present at the sentencing although she chose not to speak. See Tr. 10/13/04 at 49. The Court also heard a statement from Ms. Wilde's daughter, Leanne Place, concerning her caring relationship with Sweeney, whom she considers her father and "the only grandfather [her] children

---

[4] Sweeney proffers no evidence of any "people who knew [his] character" and would have been competent to testify on the issue of whether he "will be" a sex offender in the future. The only evidence in the record concerning Sweeney's likelihood of reoffending was Dr. Buchanan's conclusion that "effective detection and treatment" of Sweeney's depression and alcohol dependence "will reduce the chances of further offending," as will "making psychiatric treatment a condition of" Sweeney's supervised release.

13

have ever known." Id. 49-52. More importantly, Sweeney's assertion that his attorney should have argued that he "was/is ... not ... a sex offender" would have lacked credibility, given the behavior to which Sweeney pleaded guilty.

**D.   "Ground Four: Unconstitutional Sentencing Enhancements"**

Sweeney argues that his sentence was too harsh based on his criminal history and his behavior, which was "only fantasy conversation." This appears to overlap with his argument that he should not have been convicted because he was caught in a sting operation and the purported victim of the offense was not a real 13-year-old girl. Additionally, petitioner challenges application of the 2003 Sentencing Guidelines; the fact that the statute under which he was convicted is in the "past tense;" and the application of the mandatory minimum sentence.

First, as this Court held in its October 14, 2004 sentencing ruling, "the fact that the intended victim in this case was an FBI Agent, not a real 13-year-old, is of no consequence in determining whether the offense conduct ... occurred." Tr. 10/14/04 at 4 (citing United States v. Farner, 251 F.3d 510 (5th Cir. 2001) and United States v. Butler, 92 F.3d 960 (9th Cir. 1996)). As the Second Circuit held subsequently in affirming the conviction under 18 U.S.C. § 2422(b) of a defendant charged with enticing a virtual minor who was "the fictitious creation of undercover federal law enforcement officers," "[i]t is hornbook

law that factual impossibility is not a defense to a charge of attempt in substantive criminal law." United States v. Weisser, 417 F.3d 336, 340, 352 (2d Cir. 2005).

The unpublished one-page ruling in United States v. Hicks, No. Crim. 05-4201 (CRWDW), 2005 WL 2090785 (W.D. Mo. Aug. 29, 2005), which Sweeney cites, while holding that an actual minor victim was necessary to sustain a conviction under § 2422(b), also acknowledged that its holding was contrary to those of several appeals courts.

As the Fifth Circuit explained in Farner, 251 F.3d at 513, the main issue in a prosecution for attempting to entice a minor under 18 U.S.C. § 2422(b) is whether "the defendant acted with the kind of culpability ... required for the commission of the underlying substantive offense."[5]  Even though the "minor" in Farner turned out to be an adult law enforcement agent posing online as a 14-year-old girl, the defendant still had a culpable mental state because "the person whom he desired to entice was a 14-year-old girl.  The only reason he failed was because the true facts were not as he believed them to be." Id.  Because factual impossibility is not a defense to a charge of attempt, Weisser, 417 F.3d at 352, a defendant can be convicted based on his intention to entice a "fictional" minor.  This Court therefore

---

[5] The defendant also must be found to have taken a "substantial step" toward commission of the crime. Farner, 251 F.3d at 513.

15

rejects Sweeney's argument that his "fantasy conversation" with an FBI agent was an insufficient basis for a conviction.

Second, Sweeney was sentenced in October 2004 for offense conduct that took place in January-February 2004, and therefore application of the Sentencing Guidelines Manual that went into effect in November 2003 was appropriate.  U.S.S.G. § 1B1.11(a) ("The court shall use the Guidelines Manual in effect on the date that the defendant is sentenced."); U.S.S.G. § 1B1.11(b)(1) ("If the court determines that use of the Guidelines Manual in effect on the date that the defendant is sentenced would violate the ex post facto clause of the United States Constitution, the court shall use the Guidelines Manual in effect on the date that the offense of conviction was committed.").  The November 2003 Guidelines were in effect both at the time of the offense and at the time of sentencing, and there were no other applicable Guidelines.  Defendant's argument thus is without merit.

Third, Sweeney argues that because the statute under which he was convicted is written in the "past tense," and he had not actually harmed any child, he should not have been sentenced for the behavior alleged in the Information.  Defendant misunderstands that he was convicted of an <u>attempt</u> to violate § 2422(b), and an attempt to commit a crime necessarily means that the crime was not completed.  "Indeed, the Guidelines specifically direct courts to base sentences on 'any <u>intended</u>

offense conduct that can be established with reasonable certainty.'" Weisser, 417 F.3d at 352 (quoting U.S.S.G. § 2X1.1(a)) (emphasis supplied).

Fourth, Sweeney was sentenced in Criminal History Category I, the lowest category.  Regardless of his assertions that the Probation Office incorrectly characterized his past DUI offenses, his criminal history category could not have been lower, and therefore his sentence would not have been different.

Fifth, Sweeney mistakenly asserts that Blakely v. Washington, 542 U.S. 296 (2004), made his statutory mandatory minimum sentence "advisory."  Reply at 5.  Blakely, 530 U.S. at 303, and its successor, United States v. Booker, 543 U.S. 220, 244 (2005), concerned maximum sentences a court could impose absent jury findings, not minimum sentences.  Neither case addressed Congress' power to enact mandatory minimum sentences.  Further, Sweeney admitted to all the facts necessary to convict him under the statute imposing the applicable 5-year mandatory minimum.  Therefore the Court finds no Sixth Amendment violation in Sweeney's sentence.

### III. Conclusion

Accordingly, petitioner's motion to vacate, set aside or correct his sentence [Doc. #1] is DENIED.  His motion for appointment of counsel [Doc. # 10] is DENIED for failure to show likely merit.  See Da Conceicao Custodio v. INS, 2002 U.S. Dist.

LEXIS 13608, at *5 (D. Conn. June 28, 2002) (quoting <u>Hodge v. Police Officers</u>, 802 F.2d 58, 61 (2d Cir. 1986) ("In determining whether to appoint counsel, the district judge should first determine whether the indigent's position seems likely to be of substance.")).  Because Sweeney has not made a showing of the denial of a constitutional right, a certificate of appealability will not issue.  <u>See</u> 28 U.S.C. § 2253.

    The Clerk is directed to enter judgment for respondent and close this case.

                                      IT IS SO ORDERED.

                                      /s/
                                    _____
                                    JANET BOND ARTERTON, U.S.D.J.

**Dated at New Haven, Connecticut, this 6th day of October, 2006.**